THE BATES MACHINE COMPANY

*v.*

THOMAS J. COOKSON.

*Opinion filed April 24, 1903.*

CONTRACTS—*term "net profits" construed.* The term "net profits," as applied to the profits arising from the manufacture and sale of machines, means, if unqualified, the remainder after deducting all expenses; but if the contract itself provides that the net profits shall be arrived at "in the manner customary with the party of the second part," the custom thus adopted should control.

*Bates Machine Co.* v. *Cookson,* 104 Ill. App. 457, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

This is a writ of error to the Appellate Court for the Second District by the Bates Machine Company, appellant below, to reverse the decision of that court affirming a decree of the circuit court of Will county in a proceeding for an injunction and an accounting.

Plaintiff in error is a corporation engaged in the manufacture of engines, machinery, heaters, etc., having its principal office at Joliet. On December 9, 1895, Thomas J. Cookson, being the owner of a patent covering an improvement on feed water heaters and purifiers, used in connection with engines and boilers, entered into a contract with the plaintiff in error, granting to it the exclusive license to manufacture and sell the machines covered by his patent, in consideration of the payment to him of certain "royalties or commissions." The contract is as follows:

"Memorandum of agreement made this 9th day of December, A. D. 1895, between T. J. Cookson, of Chicago, Cook county, Illinois, party of the first part, and the Bates Machine Company, of Joliet, Will county, Illinois, a corporation organized and doing business under the laws of the State of Illinois, party of the second part:

"*Witnesseth*, that the party of the first part, in consideration of the sum of one dollar to him in hand paid and other valuable presents, hereby grants to the party of the second part the sole right, under letters patent of the United States numbered 542,331, dated July 9, 1895, and issued to the said T. J. Cookson, to build and sell feed water heaters and purifiers embodying the improvements patented by said patents, during the life of said patents; also the sole right to build and embody such other improvements in feed water heaters and purifiers as the said T. J. Cookson may hereafter make or have patented.

-"As a further consideration for the above grant the said party of the second part agrees to pay to the said party of the first part, annually, a royalty or commission of twenty per

cent (20 per cent) of the net profits derived from the sale of said feed water heaters and purifiers between the first day of February, A. D. 1897, and the expiration of the period hereinbefore mentioned, provided the annual net profits do not exceed seven thousand five hundred dollars ($7500). Should the net profits exceed the sum of seventy-five hundred dollars for any year, then the royalty or commission for that year is to be fifteen per cent. The net profits from each year's business is to be ascertained by figuring the cost of labor and materials as follows: Labor at the average shop cost per man, arrived at in the manner customary with said party of the second part; iron castings at three cents per pound, and wrought iron, steel and fittings at the ruling market prices.

"The said party of the first part agrees to hold the said party of the second part harmless from any damages that may result from infringement suits brought, and to personally defend at his own expense any and all suits that may be so instituted by the Excelsior Heater Company, C. E. Ferreira, or any other competitors.

"In testimony whereof the parties hereto have hereunto set their hands and seals the day and year first above written.

T. J. COOKSON,        [Seal.]

BATES MACHINE COMPANY,        [Seal.]

By W. O. BATES, *Sec'y and Treas.*"

Soon after the making of this contract Cookson entered the employ of the company as an agent or salesman, and the company about the same time proceeded to manufacture the heaters and place them on the market. In preparing them for sale a large amount of money had to be expended by the company in making patterns, advertising in trade journals, etc. The company also became involved in litigation in defending the patent, incurring a large expense, about which there is no controversy in this suit. For some time prior to March 2, 1900, the company and Cookson were unable to determine the amount due the latter for royalties, by reason of a disagreement between them as to the proper construction of said contract, and on that date, because the company rendered an account showing that it owed him nothing and because he deemed the same unjust and unfair to him, he wrote a letter to the company declaring his pur-

pose to revoke and cancel the contract, forbidding the company to build or sell any more feed water heaters, and demanding an accounting. The company thereupon filed this bill, setting up the foregoing facts, praying for an injunction to restrain Cookson from rescinding the contract, offering to account to him for the royalties due, and for his salary, etc., claiming that after making all proper deductions there remained a balance in favor of the company of about $75. Cookson filed his answer and also a cross-bill, the latter seeking to have the contract of sale set aside and to restrain the company from further manufacturing and selling the device covered by the patent. A demurrer was sustained to the cross-bill, and the defendant electing to stand by the same, it was dismissed, and no appeal has been taken from that order.

The cause was referred to a master to state the account, which he did, finding the total amount due from the company to Cookson to February 1, 1900, to be $2366.83. In the fifth paragraph of that report he found that at about the time of the execution of the contract between the parties, and for some time prior thereto, "the said Bates Machine Company had adopted and had in use a certain system for arriving at the average shop cost of labor on the various machines and other products manufactured by them, and that this system was arrived at by adding to the actual cost of labor on each article produced, a sum equal to sixty per cent of such actual labor, which said sum of sixty per cent so added was intended to cover and embrace all other items of expense entering into the construction and manufacture of their products which were not embraced within the items of labor, iron castings and wrought iron, steel and fittings which actually entered into the construction of said machine; that said system was arrived at after a careful computation by officers and employees of said company, the result of which computation showed that for a period of years the operating expenses of said Bates Machine

Company, including salaries of officers and office men, taxes, insurance, advertising, and all other items of general expense, amounted in the aggregate to about sixty per cent of the sum expended by said Bates Machine Company in the payment of labor; that said system of adding sixty per cent to the shop cost of labor was in general use in the Bates Machine Company and was applied to the manufacture and sale of all its products, for the purpose of arriving at a figure which showed, approximately, the actual cost of the article produced by them, and that said contract between the said Bates Machine Company and Thomas J. Cookson was executed and made with reference to said system." In the sixth paragraph he found "that in arriving at the net profits, as used in said contract, it was the intention of the parties, as expressed in said contract, that from the aggregate amount derived from the sale of said feed water heaters for each year, respectively, there should be deducted the actual shop cost of labor used in the production of said feed water heaters and purifiers, plus sixty per cent thereof to cover all other costs of production, and also the amount of iron castings used in said machines, figured at three cents per pound, and wrought iron, steel and fittings at the regular market price." He found that during the first year's business, beginning February 1, 1897, the company manufactured and sold forty-one heaters for $10,669.50; during the second year, sixty heaters sold for $12,667.50, and during the third year, ending February 1, 1900, (the date of the accounting,) one hundred and eighteen heaters sold at $30,807; that in making and selling the machines for the first year (on the basis of the fifth and sixth findings in his report) it incurred an expense of $5249.81, leaving as the net profits for that year $5419.69, the defendant's share of which, at twenty per cent, amounted to $1083.94; that in making those of the second year it incurred an expense of $6689.29, leaving as the net profits for that year

$5978.21, the defendant's share of which, at twenty per cent, amounted to $1195.64; that in making and selling those of the third year it incurred an expense of $18,-257.15, leaving as the net profits of that year $12,549.85, defendant's share of which, at fifteen per cent, amounted to $1882.48.    He further found that from the aggregate of the three years' royalties or commissions, after deducting $1985.65 expended by the company as solicitors' fees, etc., in defending the patents, there remained a balance due the defendant of $2176.41, and that he was entitled to interest upon that sum, at five per cent, from February 1, 1900, to the date of his report, amounting to $190.42, making the total amount due him $2366.83.

To this report the complainant, among others, filed the following objection: "It objects to the sixth finding of the master, for the reason that the construction of the contract of December 9, 1895, is not the proper construction to be placed upon the said contract under the pleadings and evidence in this case, if, by said finding, said master means that no other charges are to be made against the gross receipts except the items specified in said finding, to-wit, the actual shop cost of labor plus sixty per cent, and the amount of iron castings at three cents per pound, and wrought iron, steel and fittings at the ruling market prices; and this objector insists that, in addition to said items to be taken into consideration in estimating the profits under said contract, should be added the cost of drawings, of patterns, of catalogues, of advertising, of express charges, of certain commissions to parties for negotiating the sales of heaters, of freight paid where heaters were sold to be delivered at the residence of the purchaser, of costs of erecting where such costs were incurred according to the contract of sale, and of salary and expenses paid the said Cookson while making said sales."

The master further found that shortly after said contract was entered into it became necessary, in order to

manufacture the heaters and purifiers, to prepare certain patterns from which to make proper castings for the various sizes of said heaters, in the manufacture of which patterns the said Bates Machine Company expended a considerable sum of money, "and that some time after said contract was entered into, a verbal agreement was made between the said Bates Machine Company and the said Thomas J. Cookson, by which said Cookson waived all royalties to the manufacture of the machines covered by his patent for the first year and up to February 1, 1897, in consideration of the said Bates Machine Company preparing and paying for such patterns."

The complainant's objections to the master's report being overruled, were certified to the court as exceptions thereto. Although the chancellor arrived at his conclusion by a somewhat different process of stating the account, he, in effect, overruled the objections and confirmed the master's report, entering a decree upon the account stated by the master, less the interest item of $190.42. No objections were filed to the report by the defendant. The complainant prosecuted an appeal to the Appellate Court for the Second District, where the decree below was affirmed.

GARNSEY & KNOX, for plaintiff in error.

EDWARD MAHER, (FREDERICK A. HILL, of counsel,) for defendant in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The only substantial controversy between the parties is as to the proper meaning of the contract of December 9, 1895, in the use of the words "net profits," as therein stipulated. It may be conceded, as contended by counsel for plaintiff in error, that the term "net profits," unqualified, would mean the remainder after deducting all expenses of every kind in the manufacture and sale of the machines. But this contract expressly provides how the

"net profits" shall be ascertained. The only ambiguity or indefiniteness in the agreement is found in the words, "labor at the average shop cost per man, arrived at in the manner customary with said party of the second part." The manner customary with the Bates Machine Company of arriving at the average shop cost per man was to add to the actual cost of labor the operating expenses of the company in salaries of officers and office men, taxes, insurance, advertising, and all other items of general expense, which amounted in the aggregate to about sixty per cent of the sum expended in the actual payment of labor. When that fact was ascertained the contract ceased to be in any way uncertain, and we think the construction so placed upon the contract a fair and reasonable one,—at least so far as the company is concerned,—and its custom as ascertained fully sustained by the evidence. We also think the evidence fully authorized the conclusions reached by the master in the statement of the account between the parties.

But counsel for plaintiff in error insist that it was error to overrule its objections to the master's report and disallow the cost of drawings, patterns, catalogues, advertising, etc., because the defendant, by his answer to the original bill, admitted that said items of expense were proper to be charged against the gross receipts. The part of the answer upon which the contention is based is as follows:

"*Fifth*—This defendant admits that a considerable sum of money was laid out and expended for the purpose of paying the expense of patent litigation, but he avers that he has paid back to the Bates Machine Company, from royalties and commissions due him, all of the said money; and he also avers that the expense connected with the advertising, cataloguing, and all other printed matter explaining the method of the operation of the Cookson heater, has been paid for and deducted as part of the cost of manufacturing the heater in accordance

with the license contract, and consequently this defendant avers that such advertising matter is no longer an item of expense or a possible item of loss in the settlement of this controversy.

"*Sixth*—This defendant denies that twenty-three different sizes of heaters, requiring expensive patterns, were made, but he says that there were eleven patterns made at the expense of said company, and he also avers that every dollar of the expense for said patterns was paid by this defendant out of and from the royalties accruing to him under said contract of license set forth in said bill."

These clauses of the answer, fairly construed, amount to no more than an averment that upon a full and fair accounting, in accordance with the license contract, the items of expense therein named have been deducted as part of the cost of manufacturing, and that the only patterns made at the expense of the company had been paid for by defendant out of royalties or commissions due him. Nothing is said, either in the bill or answer, about the manner customary with the company in ascertaining the cost of labor, etc. The answer does no more than to aver that the sixty per cent added by the master in his construction of "the license contract" covered all the expenses of drawings, patterns, advertising, and all other items of general expense, and that the same had been paid by commissions due the defendant. Certainly, it cannot be seriously contended that the defendant, by his answer, admitted that the cost of drawings, patterns, catalogues, advertising, etc., should be allowed in addition to the sixty per cent which actually was allowed. In other words, the answer cannot be fairly construed to admit charges and expenses beyond those actually covered by the license contract.

On the whole record we think the decree of the circuit court is right and that the judgment of the Appellate Court affirming the same is proper. It will accordingly be affirmed.                    *Judgment affirmed.*